**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**


| | |
|---|---|
| **VIOLET B. COLLINS** | **CIVIL ACTION** |
| **V.** | **No. 06-8547** |
| **ENCOMPASS INSURANCE CO. a/k/a** | **SECTION "B"** |
| **ENCOMPASS INDEMNITY COMPANY, et al.** | |


## ORDER AND REASON

Defendant, National Flood Insurance Program, files a Supplemental Memorandum in Support of the Motion for Summary Judgment for failure to file a sworn proof of loss. (Rec. Doc. 36). Plaintiff, Violet Collins, files a Supplemental Memorandum in Opposition. (Rec. Doc. 35). For the following reasons, **IT IS ORDERED** that the instant motion is **GRANTED**.

## Facts of the Case:

Plaintiff, Violette Collins, filed suit to recover additional insurance proceeds for damage to her home at 3721 Vincennes Place, New Orleans, incurred during Hurricane Katrina. (Rec. Doc. 1). Plaintiff's property was insured by the Federal Emergency Management Agency ("FEMA") with a Standard Flood Insurance Policy ("SFIP") for $225,000 in building coverage and $12,500 in contents coverage. (Rec. Doc. 13 at 2).

On September 6, 2005, Plaintiff contacted FEMA to provide notification of her loss as a result of flooding caused by Hurricane Katrina on August 29, 2005. (Rec. Doc. 13-4). Thereafter, on October 22, 2005, Jim Sabolick, an adjuster with the National Catastrophe Claims, issued a final report assessing the actual cash value of plaintiff's loss at $172,096.00 after the $2,000.00 deductible for both building ($159,596.00) and contents loss ($12,500.00). (Rec. Doc. 13-4). FEMA subsequently issued Plaintiff checks between November 2, 2005 and February 8, 2006, totaling $172,096.00. (Rec. Doc. 13-4). On July 26, 2006, Plaintiff submitted supplemental documentation to her insurance provider because the adjuster missed certain items on the original adjustment, and FEMA issued Plaintiff additional checks in the amount of $1,196.00 and $302.00 on July 26 and 28, 2006, respectively. (Rec. Doc. 13-4).

On August 31, 2005, David I. Maurstad, the then Acting Federal Insurance Administrator, issued a partial limited waiver of the deadline to file a sworn Proof of Loss ("POL"), allowing payment of undisputed claims without a formal POL and allowing the policy holder to file a POL within one year from the date of the loss if the policy holder disputes the claim settlement. (Rec. Doc. 17-2). The memo contains the following language, which is at issue in this litigation:

[I]n the event a policyholder disagrees with the insurer's adjustment, settlement, or payment of the claim, a policyholder **may** submit to the insurer a proof of loss within one year from the date of the loss. The POL must meet the requirements of VII.J.4. of the SFIP…

(Rec. Doc.    (Rec.   Doc.   17-2)(emphasis  added).    Thus, the Maurstad Memorandum extended the filing deadline for a POL from 60 days to one year from the date of loss for all insureds that dispute the insurer's adjustment, settlement, or payment of the claim.

On  August  28,  2007,  Plaintiff  filed  the  instant  suit against her NFIP provider and FEMA in the Civil District Court for the Parish of Orleans, State of Louisiana, alleging the sums recovered are not sufficient to satisfy the terms of her policy. (Rec. Doc. 1).  Defendant argues Plaintiff has not submitted a POL stating the amount of her supplemental claim, and thus cannot sue Defendant. (Rec. Doc. 1 at 7). Plaintiff argues the Maurstad Memorandum, "Waiver of the Proof of Loss Requirement in the Standard Flood Insurance Policy," (Maurstad Memorandum) rendered the POL claim requirement permissive. (Rec. Doc. 17 at 7).

On  June  24,  2009,  the  Defendant's  Motion  for  Summary Judgment  was  granted  in  part  with  respect  to  the  Court's recognition that Plaintiff failed to submit a Proof of Loss and

the legal interpretation that filing a Proof of Loss is mandatory rather than permissive.  The motion was denied with respect to Defendant's request that Plaintiff's claims be dismissed for failure to submit a POL.

It was ordered by this Court that in light of Plaintiff's argument that her eye disease may be related to her unintentional failure to timely file a POL, parties should conduct additional discovery and provide supplemental briefs on the issue of Plaintiff's eye disease and its effect on her failure to file a sworn proof of loss. (Rec. Doc. 29, Order and Reasons).  It was further ordered that the pretrial conference and trial be continued until after consideration of supplemental materials

**Law and Analysis**

**I. Standard of Review for Summary Judgment**

Summary Judgment is proper if the pleadings, depositions, interrogatory answers, and admissions, together with any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment on the matter.  Fed. R. Civ. P. 56(c); See also *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).  The moving party has the burden of showing there is no genuine issue of material fact, but may discharge this burden by showing the absence of evidence

necessary to support an essential element of the nonmoving party's case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In order to satisfy the burden, the non-moving party must put forth competent evidence and cannot rely on "unsubstantiated assertions" and "conclusory allegations". *Hopper v. Frank*, 16 F.3d 92 (5th Cir. 1994).

## II. Equitable Estoppel

To recover under a principle of estoppel, plaintiff must show:(1) that the insurer was aware of the facts; (2) that the insurer intended its act or omission to be acted upon; (3) that plaintiff did not have knowledge of the facts- i.e., that she did not know the policy required timely submission of the proof of loss; and (4) that plaintiff reasonably relied on the conduct of the insurer to her substantial injury. *Maloney v. FEMA*, 1996 WL 626325 (E.D.La. Oct. 24 1996),(citing *Ingalls Shipbuilding, Inc. v. Director, O.W.C.P.*, 976 F.2d 934, 935 (5th Cir. 1992)). All these elements must be met to prevail on estoppel grounds. 976 F.2d at 937.

Applying the standards above, the Court finds that the Plaintiff failed to met the burden to prove dismissal of the Motion for Summary Judgment under the principle of equitable estoppel. First, the Plaintiff must prove all four elements of equitable estoppel, however the Court finds that at the very

least the second and third element could not be met. The second element requires Plaintiff to prove that FEMA or her NFIP provider intended, by issuing the Maurstad Memorandum, to lull Plaintiff into believing that the proof of loss requirement was waived. Plaintiff has neither proved intent nor suggested a motive for FEMA or her NFIP provider to do so. In the absence of proof that FEMA or her NFIP provider met the requisite intent to deceive, and in the absence of any clear motive, the Court finds the second element has not been met.

The third element requires Plaintiff to prove that she had no knowledge of the relevant facts, that is, she did not know of the proof of loss requirement and its timely submission. Plaintiff does not claim she was unaware of the proof of loss requirement; however she claims she believed the requirement was waived or should be waived due to 1) the language in the Maurstad Memorandum 2) the statement made in the adjuster's report, and 3) her near-blindness. (Rec. Doc. 17 and 35; Affidavit of Dr. Theodore J. Borgman; Affidavit of Violet B. Collins; Exhibit D).

First, Plaintiff argues that the language in the Maurstad Memorandum made filing a POL permissive. (Rec. Doc. 29, Order and Reasons). The Fifth Circuit and other courts have held that when the Maurstad Memorandum is read in its entirety, the logical interpretation of the language at issue *requires* filing a POL

before a claimant may sue. *Marseilles Homeowners Condominium Assoc., Inc. v. Fidelity Nt'l Ins. Co.*, 542 F.3d 1053, 1056 (5th Cir. 2008); *Shuford v. Fidelity Nt'l Prop. & Cas. Co.*, 508 F.3d 1337 (11th Cir. 2005). Plaintiff argues that the Fifth Circuit's reasoning in *Marseilles* is factually distinguishable because it did not entertain a waiver of the POL requirement by the WYO Insurer, Fidelity, because the plaintiff did not raise this issue prior to the entry of judgment. 542 F.3d at 1056. However, Defendant asserts that the *Marseilles* Court cited with approval another Fifth Circuit panel's rejection of an estoppel argument based on an alleged misrepresentation that no POL was needed by the attorney for a WYO insurer; similar to Plaintiff's own misinterpretation that the POL requirement was waived and no POL was needed. *Id.*; (citing *Richardson v. American Bankers Ins. Co.*, 279 Fed. Appx. 295, 299 (5th Cir. 2008) (unpublished)). Therefore, this Court, in agreement with the Fifth Circuit and other courts, found that the language in the Maurstad Memorandum indicates a mandatory, not a permissive POL filing requirement; moreover the filing requirement at issue was not waived. (Rec. Doc. 29, Order and Reasons).

Second, the report issued to Plaintiff by the first insurance adjuster, Jim Sabolick, stated that "the requirement for submitting a Proof of Loss has been waived by the NFIP Flood

Administrator." (Rec. Doc. 17, Exhibit D). Plaintiff asserts that she understood that the requirement was waived due to this statement along with her interpretation of the Maurstad Memorandum. (Rec. Doc. 17). Additionally, Plaintiff contends that FEMA/NFIP were acting in the capacity of an insurer and must be responsible for the Adjuster's statement. (Rec. Doc. 17). However, Defendant asserts that Plaintiff was required to be familiar with the legal requirements for receipt of federal funds under her flood insurance policy. (Rec. Doc. 13-2). The Fifth Circuit explained, "[w]hen federal funds are implicated, the person seeking those funds is obligated to familiarize himself with the legal requirements for receipt of such funds." *Wright v. Allstate Ins. Co.*, 415 F.3d 384, 388 (5th Cir. 2008)(citing *Heckler v. Cmty. Health Servs. Of Crawford County, Inc.*, 467 U.S. 51, 63 (1984)). This Court finds that Plaintiff failed to meet her obligatory duties by adhering to the adjuster's statement addressing the POL waiver without inquiry and upholds the standard that "[t]hose who deal with the Government are expected to know the law and may not rely on the conduct of Government agents contrary to the law." *Wright*, 415 F.3d at 388; *Id*.

Third, Plaintiff contends that her eye disease contributed to her lack of understanding and comprehension of the language in the Maurstad Memorandum. (Rec. Doc. 17 and 35). Plaintiff

4

suffers from wet macular degeneration, has glaucoma, eye stints and depression; resulting in near-blindness and an inability to comprehend numbers and fine print. (Rec. Doc. 35; Affidavit of Dr. Theodore J. Borgman). Plaintiff claims she "barely reads and only if the print is extremely large." Rec. Doc. 35; Affidavit of Violet Collins). Plaintiff further claims that her deficiencies prevented her from learning on her own the information set forth in the Maurstad Memorandum. (Rec. Doc. 35). However, Defendant counters that Plaintiff never asserted that she was unable to read at the time she purchased the relevant policy in April 2005 or that she was unaware of the contents of the policy. (Rec. Doc. 36). Additionally, in another flood insurance dispute, the court rejected an estoppel argument centered on the policy holders' disability and their failure to file a POL. *Gaffney v. State Farm Ins. Co.,* 1997 U.S. Dist. WL 159501 (E.D.La.). The court in *Gaffney*, with regards to the third element in estoppel, dismissed the claim in light of that plaintiffs may not have had knowledge of the contents of their policy because of the fact that they were legally blind. *Id.* at 9-10. The *Gaffney* Court found that regardless if the plaintiffs are legally blind, the plaintiffs did not assert that they did not possess the POL, did not read it or were unaware of its contents. *Id.* Accordingly, this Court finds that Plaintiff provides no authority in which courts have waived adherence to

the instant POL requirements due to a disability.  Therefore, this Court finds that the Plaintiff's debilitating eye disease does not constitute a waiver of the POL requirement.

Finally, Plaintiff must prove that she reasonably relied on the insurer's conduct to her substantial injury.  Plaintiff argues that Defendant should be estopped from denying her right to sue in this Court because her reliance upon her interpretation that the Maurstad Memeorandum made filing a POL permissive, and claims she reasonably relied on her insurance adjuster's representations in his report stating that the POL requirement was waived. (Rec. Doc. 17 and 35).  The Defendant in accordance with the *Wright* Court demonstrates that Plaintiff was responsible for her own reading of the policy content, however Plaintiff insists that she did not fail to read the policy; she detrimentally relied on the adjuster's knowledge and experience to assess her with the correct information.  *Wright,* 415 F.3d at 388;(Rec. Doc. 17 and 35).  In addition, Plaintiff claims she was lulled into thinking "they were taking care of her and there was nothing more for her to do." (Rec. Doc. 35).

Defendant demonstrates through *Richardson* that the Fifth Circuit as well as the Supreme Court rarely uphold estoppel claims against the Government.  *Richardson v. American Bankers Ins. Co.,* 279 Fed. Appx. 295, 299 (5th Cir. 2008)

(unpublished);(Rec. Doc. 23). In *Richardson*, the plaintiff contended that the insurance company's attorney told him over the phone that "proof of loss was not and would not be an issue in this lawsuit." *Id.* at 299. Richardson filed suit, and the court granted the insurer's motion for summary judgment solely on the ground that Richardson had failed to submit a sworn POL. *Id.* at 297. Richardson asserted several arguments to justify his non-compliance including an estoppel argument based on the insurance company's attorney's misrepresentation that no proof of loss was needed. *Id.* The Fifth Circuit recognized that the Supreme Court "has never upheld an assertion of an estoppel agreement against the Government by a claimant seeking public funds," and rejected Richardson's equitable estoppel claim. *Id.,* (quoting *Office of Pers. Mgmt v. Richmond*, 496 U.S. 414, 434 (1990)).

"The judiciary is powerless to uphold a claim of estoppel because doing so would encroach upon the appropriation power granted exclusively to Congress by the Constitution." *Gowland v. AETNA*, 143 F.3d 951, 955 (5th Cir. 1988); (See Also, Rec. Doc. 29, Order and Reasons). Accordingly, Plaintiff's defense of equitable estoppel fails, despite our own belief in a more equitable result.

## III. Contra Non Valentem

7

The doctrine of contra non valentem ("prescription does not run against one who could not bring his suit") prevents the running of prescription. *Landry v. Blaise, Inc.*, 829 So. 2d 661 (La. Ct. App. 4th Cir. 2002). The doctrine is based on the premise that, in some circumstances, equity and justice require that prescription be suspended because the plaintiff was prevented from enforcing her rights for reasons external to her own will. La. Prac. Civ. Pretrial § 6:95 (2008-2009 ed.); *Dominion Exploration & Production, Inc. v. Waters,* 972 So. 2d 350 (La. Ct. App. 4th Cir. 2007).

Plaintiff contends that Defendant's position is similar to cases where adjusters have lulled plaintiffs into delaying the assertion of their claims until after the prescription period had run. *Demma v. Automobile Club Inter-Insurance Exchange*, 2009 WL 2170140 (LA, 6/26/09); *Ramey v. Allstate Insurance Co., 2000 WL 17011790* (5th Cir. 2000);(Rec. Doc. 35). Plaintiff attributes her eye disease to be in support of her contra non valentem argument. (Rec. Doc. 35). However, Defendant argues that the two cases cited by Plaintiff deal with interruption of prescriptive periods, which is a non-issue in the instant case. (Rec. Doc. 36). The doctrine of contra non valentem is inapplicable because Plaintiff presents neither facts nor legal issues pertaining to the Defendant's intention to delay Plaintiff in asserting her claims in order to run the prescriptive period.

8

## IV. Eggshell Plaintiff

An "eggshell plaintiff" is required to establish a causal link between the tortious conduct and the aggravation of her pre-existing condition. *Bienemann v. State Farm Mut. Auto. Ins. Co.,* 3 So.3d 621, 2008-1045 (La.App. 3 Cir. 2/4/09).

Plaintiff asserts she should be taken "as she is" as per Louisiana law or in other words as a "classic egg-shell plaintiff," which in this case, nearly-blind and unable to read and comprehend fine print and numbers. (Rec. Doc. 35). Conversely, Defendant argues that this tort concept is misplaced in the instant federal flood insurance policy dispute. (Rec. Doc. 36). Plaintiff failed to establish the causal link between FEMA or her NFIP provider's tortuous conduct and the aggravation of her pre-existing condition. Notwithstanding the fact that proving the proposition that Defendant may be considered a "tortfeasor" would be difficult, there is no relevant authority under present circumstances to consider Plaintiff here an "eggshell plaintiff." Accordingly, the instant action is dismissed.

New Orleans, Louisiana, this 14th day of October, 2009.

_____

United States District Judge

9